UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARNOLD JOHN PRICE,

    Plaintiff,

v.                                                     Case No. 3:20-cv-0043-J-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 405(g).  Plaintiff, who suffers from depression, anxiety, bipolar disorder, and panic attacks argues the administrative law judge (ALJ) did not properly weigh the opinions of his treating physician, erroneously discounted his credibility, failed to consider lay witness testimony regarding his ability to work, and posed an incomplete hypothetical question to the vocational exert (VE).  After considering the parties' arguments and the administrative record (docs. 22, 25, 28), I find the Commissioner's decision is not supported by substantial evidence.  I remand.

A. *Background*

Plaintiff Arnold Price was born on August 27, 1961, and was 57 years old when the ALJ issued his decision that Plaintiff is not disabled. (R. 24)  Plaintiff alleges a disability onset date of March 29, 2016, due to bipolar disorder, PTSD, brain damage, mental retardation, major depression, panic attacks, anxiety, liver/spleen damage, a heart condition, and a hernia. (R. 180-88, 211, 224-31)  Plaintiff dropped out of school in the ninth grade and never returned. (R. 36)  He

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

lives alone in a home he owns, and he takes care of household chores and basic needs with the help of his sister, who lives nearby.(R. 36, 43)  According to a letter Plaintiff's sister wrote to the Commissioner in support of his application, Plaintiff was a normal teenager until one day in the summer of 1976, when he was in a car accident. (R. 274-76)  Plaintiff, his brother, and their twin girlfriends were driving home from a day at the lake when a drunk driver hit them head on.  Everyone died except for Plaintiff, who sustained life threatening injuries, including a traumatic brain injury (TBI). (*Id*.)  Plaintiff's sister wrote that Plaintiff's personality changed after the accident: he went from a carefree, happy teenager to a depressed, moody kid who did not care about family, friends, or school. (*Id*.)  The accident caused lasting psychological damage, and Plaintiff still suffers the effects of the TBI he sustained that day. (*Id*.)

      Plaintiff has past work experience at Goodwill Industries, where he worked for years in their retail shop, folding and hanging clothes and operating the register. (R. 37-38)  He can read and write but has trouble retaining information.  He struggles with the simple math required to be a cashier. (R. 38)  He does not like being around people.  At Goodwill, "[t]hey were, at first, sympathetic to my history and worked with me the best they could, but after a while, it just – it got too much and they let me go." (*Id*.)  He described his difficulties at work during his hearing testimony: "The anxiety, depression, the not being able to retain any kind of information, the panic – the panic, the anxiety that I get, you know, not being able to handle a task.  Being around people.  After a certain point, I have to escape." (R. 39)  His anxiety gets so bad that he throws up.  Plaintiff takes anxiety medication that is "working pretty well." (R. 41)  His sleep is "non-existent," and his sister "has been basically taking care of me." (R. 42-43)  Regarding his memory loss, Plaintiff traces it back to the head injury he endured in the car accident.  Doctors have told him his memory is "like a broken light switch.  It can't be fixed." (R. 43)

The ALJ found Plaintiff suffers from the severe impairments of depression, anxiety, mild neurocognitive disorder, and status post-TBI. (R. 17) Aided by the testimony of a VE, the ALJ determined Plaintiff is not disabled, despite these impairments, as he retains the RFC perform a full range of work at all exertional levels but with the following non-exertional limitations: "the claimant is limited to understanding, remembering and carryout out simple, routine tasks. The claimant is limited to occasional contact with coworkers having no contact with the public. The claimant is limited to dealing with changes in a routine work setting." (R. 19) After consulting the VE, the ALJ found that, with this RFC, Plaintiff could perform his past relevant work as a stock checker for apparel and could also work as a sorter, laundry worker, small item bagger, cleaner/washer, cleaner II, laundry laborer, house cleaner, commercial cleaner, and landscape laborer. (R. 25) Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which denied review. (R. 1-3) His administrative remedies exhausted, Plaintiff filed this action.

A. Standard of Review

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520,

3

416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

4

B.  *Discussion*

  1. *ALJ's consideration of Dr. Sanchez's opinions*

Plaintiff's first argument warrants remand. Plaintiff argues the ALJ did not articulate good cause to discount the opinions of Carlos Sanchez, M.D., his primary care physician who opined in January 2018, on a mental RFC assessment form, that Plaintiff is unable to work (doc. 22 at 12-18). The Commissioner responds that Dr. Sanchez's statement is not only inconsistent with the record but also an opinion on an issue reserved to the ALJ (doc. 25 at 3-7). I agree with Plaintiff that the ALJ's decision to assign little weight to Dr Sanchez's opinion is not supported by substantial evidence.

The method for weighing medical opinions under the Social Security Act is in the regulations at 20 C.F.R. § 416.927(c).[2] Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 416.927(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed,

---

[2] This section was rescinded on March 27, 2017, but still applies to claims filed before this date. Plaintiff filed his claim in March 2016.

longitudinal picture of . . . medical impairment." 20 C.F.R. § 416.927(c)(2). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). And the ALJ must state the weight given to different medical opinions and why. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Here, Plaintiff's treatment history is minimal. In fact, it appears Dr. Sanchez is the only doctor who treated plaintiff more than once. In January 2018, Dr. Sanchez completed a functional capacity questionnaire and a mental RFC assessment of Plaintiff. (R. 308-10) He noted he treated Plaintiff in January 2018, and in June, September, and December of 2017.[3] (R. 308) Dr. Sanchez stated Plaintiff had bipolar disorder, agoraphobia, TBI, anxiety, and memory loss, and he opined that Plaintiff is markedly limited in every category except in his ability to carry out very short and simple instructions, a category in which he is only moderately limited. (R. 309) Dr. Sanchez concluded, "Patient is unable to hold a job due to multiple medical co-morbidities." (R. 310)

The ALJ assigned Dr. Sanchez's opinion "little weight. The marked limitations are not consistent with the objective observations by Dr. Blaze. (Exhibit B5F). They also appear to be based off the claimant's subjective complaints." (R. 23) As for John Blaze, Ph.D., he completed a consultative psychological evaluation of Plaintiff in August 2016, at the agency's request. (R. 302) Dr. Blaze assessed Plaintiff with depressive disorder, mild neurocognitive disorder, and

---

[3] Based on my review of the administrative record, Dr. Sanchez and other providers at his office actually treated Plaintiff a total of 13 times between November 2013, and January 2018. The ALJ's consideration of Dr. Sanchez's opinion does not appear to account for this treatment history.

personality change due to TBI. (*Id.*)  He observed that Plaintiff's attention, concentration, mental flexibility, immediate memory recall, and social skills were all "fair." (R. 304)  On the whole, Dr. Blaze opined, "[t]he mental health symptoms based on report and clinical observations appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions.  Current prognosis for Mr. Price is guarded." (*Id.*)

Interestingly, despite rejecting Dr. Sanchez's opinion in favor of Dr. Blaze's, the ALJ assigned Dr. Blaze's opinion "less weight." (R. 27)  According to the ALJ, Dr. Blaze's statements "are rather vague and ambiguous without specific vocationally related limitations.  Additionally, the claimant was not treating with any psychiatric medications or undergoing any type of therapy at that time." (*Id.*)  So, the ALJ discounted Dr. Sanchez's opinion as being inconsistent with Dr. Blaze's, then discounted Dr. Blaze's opinion for being vague.  This leaves little for the ALJ to hang his hat on, especially because Dr. Sanchez's opinion is consistent with his treatment of Plaintiff.

Plaintiff had his first appointment with Dr. Sanchez in November 2013 – three years before his alleged onset date – to start hormone replacement therapy. (R. 327)  Plaintiff's next medical record is from February 2014, when he was evaluated under the Marchman Act by Paula Stowell, D.N.P. and psychiatrist Jared Gaines, M.D. (neither associated with Dr. Sanchez's practice). (R. 289-91)  Plaintiff told them about his car accident as a teenager and also relayed that he was sexually abused as a child by his stepfather and was currently undergoing hormone therapy to change his gender.  Dr. Stowell observed Plaintiff's speech was slow, he was tearful, his concentration and memory were poor, he had impaired impulse control, and he appeared anxious. (R. 289)  She assessed Plaintiff with major depressive disorder, panic disorder with agoraphobia,

7

PTSD, personality disorder, hormone imbalance, and a brain injury and recommended he take Cymbalta, Lexapro, and Atarax. (R. 291)

Plaintiff could not afford treatment or medications then but returned to Dr. Sanchez in February 2015 (still pre-onset date) for refills of estradiol (an estrogen hormone). (R. 325)  Dr. Sanchez prescribed estradiol patches and tablets but noted that Plaintiff had only been taking the tablets because he could not afford the patches.  Fast forward to October 2016 – seven months after his alleged onset date – and Plaintiff began treating with Dr. Sanchez for anxiety; Dr. Sanchez prescribed diazepam in addition to estradiol. (R. 323)  In October and December 2016 and March 2017, Plaintiff reported having an increase in stress and anxiety. (R. 319-21)  Nurse practitioner Melissa Senior of Dr. Sanchez's practice refilled Plaintiff's diazepam and prescribed Wellbutrin.

In June 2017, Plaintiff told Dr. Sanchez he was not sure he wanted to continue with hormone replacement therapy and that he "would like to go back to Arnold Price." (R. 314)  His anxiety and stress levels were high.  Dr. Sanchez warned Plaintiff about abusing diazepam – Plaintiff was running out of the medication sooner than 30 days. (*Id*.)  Following Plaintiff's December 2017 appointment, Dr. Sanchez wrote that Plaintiff was very anxious, had poor short term and long-term memory, was experiencing mood swings, and had "depression all over the chart." (R. 311)  Dr. Sanchez refilled his diazepam and added Depakote and Trazodone (in addition to estradiol, which Plaintiff continued to take).

Plaintiff's next appointment was in January 2018, after which Dr. Sanchez completed his functional capacity assessment and opined Plaintiff cannot work due to bipolar disorder, insomnia, anxiety, TBI, memory loss, and agoraphobia. (R. 305-10)  The record also includes notes from three more appointments with Dr. Sanchez, in February, May, and August 2018.  Each time, Plaintiff reported being very stressed, sleepless, anxious around people, and unable to remember

8

things or to concentrate.  Depakote (for bipolar disorder) helped his mood swings, but he could not afford it.  Plaintiff continued with hormone replacement therapy. (R. 331, 334, 340)

To be sure, Dr. Sanchez's January 2018 opinion that Plaintiff was unable to work due to multiple co-morbidities is not a medical one entitled to deference and instead is an opinion on an issue reserved to the Commissioner.  *See* 20 C.F.R. § 416.946(c).  But the ALJ did not articulate good cause to discount the rest of Dr. Sanchez's treatment of Plaintiff.  One of the reasons the ALJ rejected Dr. Sanchez's opinion is that it "appear[ed] to be based off the claimant's subjective complaints." (R. 23)  However, a "psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning" and "it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms." *Roundtree v. Saul*, No. 8:18-cv-1524-T-SPF, 2019 WL 4668174, at * 4 (M.D. Fla. Sept. 25, 2019) (quoting *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016)).  A mind cannot be x-rayed, and "there is no blood test for bipolar disorder."  *Aurand*, 654 F. App'x at 837 and n.4.

The ALJ also discounted Dr. Sanchez's opinion by pointing to Dr. Blaze's observations, then assigned little weight to Dr. Blaze's opinion.  In fact, the only opinion regarding Plaintiff's mental impairments the ALJ credits is that of Michelle Butler, Psy.D., a non-examining state agency psychologist who opined at the reconsideration level that Plaintiff can understand and retain simple instructions and sustain concentration and attention. (R. 23, 91)  She determined that Plaintiff possesses the social skills to interact with others to complete tasks and the coping and problem-solving skills to manage stress. (R. 91)  But Dr. Butler's opinion is dated August 25, 2016, just three days after Dr. Blaze completed his consultative evaluation.  There is no indication

9

she had access to or reviewed Dr. Blaze's findings in formulating her opinion (her RFC assessment indicates she did not review any medical or opinion evidence).

This adds up to a confusing analysis – "with no explanation given and no obvious reason for the inconsistency in sight – [which] makes it impossible for [the Court] to consider this rationale good cause." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1261 (11th Cir. 2019) (rejecting ALJ's decision to discount treating physicians' opinion that plaintiff's bipolar disorder was disabling in favor of consultative and non-examining source opinions, based on treating physicians' "perceived sporadic treatment"; the treating sources "administered significant treatment multiple times over months" and the non-treating sources either saw the plaintiff once or not at all); *see also Spencer by Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam) (rejecting the ALJ's inconsistent reliance on one source's opinion to undermine that of a treating physician when the ALJ rejected the first source's opinion about other important matters on unexplained grounds); *but see Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 866 n.10 (11th Cir. 2019) (in DIB appeal involving veteran's allegedly disabling PTSD, distinguishing *Schick* and upholding ALJ's decision to discount treating psychologist's opinion in favor of other evidence, because the ALJ highlighted "several genuine inconsistencies" between treating physician's treatment notes and her testimony, and plaintiff's daily activities were inconsistent with disabling PTSD). Additionally, contrary to the ALJ's statement, Dr. Blaze did not contradict Dr. Sanchez. At bottom, both sources concluded Plaintiff's mental illness interfered with his ability to work and assigned him a guarded prognosis. And Dr. Blaze was a one-time examiner – not a treating source – who authored his opinion before Plaintiff got treatment for his anxiety and bipolar disorder. *See Crawford v. Comm'r of Soc Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (one-time

examiners are not properly considered treating physicians). The ALJ did not articulate good cause to reject Dr. Sanchez's opinion; I remand.

### 2. *Plaintiff's remaining arguments*

Plaintiff also argues the ALJ failed to consider a letter his former boss at Goodwill submitted, attesting to the accommodations she made to keep Plaintiff employed despite his limitations. There are two pieces of lay witness evidence in the record, one is the letter from Plaintiff's sister (mentioned above) and the other is the letter from Plaintiff's former boss. Regarding the former, the ALJ stated: "Ms. Phillips stated the claimant had been involved in a car accident in 1976 that had resulted in a TBI, was the victim of child abuse, had ongoing depression and anxiety and had ongoing difficulties with concentration, panic attacks and difficulties with coping." (R. 22) The ALJ "affords those statements weight to the extent they support the limitations set forth above." (*Id.*) The ALJ does not mention the latter piece of evidence.

Under the regulations, third-party testimony by a lay person is considered "other source" testimony. 20 C.F.R. § 416.913. This evidence may be used in addressing the nature and severity of an impairment. *Id*. In evaluating the evidence, the ALJ should consider whether the evidence is consistent with the other evidence in the case, the nature and extent of the claimant's relationship to a witness, and any other factors that tend to support or refute the evidence. SSR 06-3p.[4] According to the Eleventh Circuit:

> The testimony of family members is evidence of a claimant's subjective feeling of pain. *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Even if the

---

[4] The SSA rescinded SSR 06-03p for claims filed *after* March 27, 2017 (Plaintiff filed his claim on March 29, 2016). *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (Mar. 27, 2017). In any event, the Court is bound by Eleventh Circuit precedent even in the face of new regulations. *See Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007) (Eleventh Circuit precedent that a VE's testimony trumps an inconsistent DOT provision prevails over a later-published social security ruling to the contrary).

11

> ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony. *Id.* at 1254-55 (citing *Allen v. Schweiker*, 642 F.2d 799 (5th Cir. 1981)).

*Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006); *see also Williams v. Saul*, No. 5:18-cv-158-MJF, 2019 WL 4280055, at *16 (N.D. Fla. Sept. 9, 2019).

Here, the ALJ explicitly rejected Plaintiff's sister's letter and (arguably) implicitly rejected Plaintiff's former boss's letter. But these rejections are dependent on the ALJ's interpretation of Dr. Sanchez's opinion as inconsistent with the evidence and based solely on Plaintiff's subjective symptoms. Considering my finding that the ALJ did not have good cause to reject Dr. Sanchez's opinions, on remand the ALJ should also revisit the lay witness testimony. Because remand is required, I do not address Plaintiff's remaining contentions.

*C. Conclusion*

For the reasons stated above, it is ORDERED:

(1) The ALJ's decision is REVERSED and REMANDED; and

(2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on March 4, 2021.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

13